BEHN, APPELLANT, *v.* THE REGISTRAR OF PROPERTY, RESPONDENT.

APPEAL from a Decision of the Registrar of Property of San Juan, Section 1, Denying Admission to Record of a Contract of Lease.

No. 197.—Decided December 17, 1914.

APPEAL—ADMINISTRATIVE APPEAL.—The period of twenty days fixed by section 3 of the Act to provide for appeals from the decisions of registrars of property of March 1, 1902 (section 801 of the Revised Statutes of Porto Rico), begins to run from the date of notice of the registrar's decision, and the appeal is understood to be taken when the appellant files in this court the documents presented in the registry accompanied by a notice of appeal and not when he files his brief in support of the appeal.

ID.—ACQUIESCENCE IN REGISTRAR'S DECISION—CURABLE DEFECTS.—When, as in the case at bar, a document is presented in the registry of property for record and admission thereof is denied and the interested party fails to appeal therefrom within the legal period, his acquiescence therein is taken for granted and if said party presents the deed anew accompanied by other documents which, in his judgment, cure the defects assigned by the registrar, then, and in case the registrar insists in his denial, the interested party may appeal to this court; but in such appeal the court can only determine whether the defects assigned in the first decision acquiesced in were or were not properly cured.

CURABLE DEFECTS.—After considering the additional documents presented in this case to the registrar, it was held that the curable defects assigned under letters A, B, C, D, and E of the decision of June 15, 1914, which was acquiesced in, were cured.

The facts are stated in the opinion.

*Mr. Herminio Díaz Navarro* for the appellant.

Mr. José S. Belaval, the registrar, appeared by brief *pro se.*

MR. JUSTICE DEL TORO delivered the opinion of the court.

This is an administrative appeal from a decision of the Registrar of Property of San Juan, Section 1, denying admission to record of a certain contract of lease entered into between the Commissioner of the Interior of Porto Rico and Hernand Behn.

From the documents brought up to this court it appears that on May 21, 1914, Ernest S. Wheeler, Assistant Commissioner of the Interior acting as Commissioner by reason of the vacancy of said office, and Hernand Behn appeared before Notary Roberto H. Todd and ratified and converted into a public deed a contract of lease which they had entered into on November 12, 1913.

The leased property consists of a tract of mangrove shore belonging to The People of Porto Rico situated east of the San Antonio Dock on the Bay of San Juan. The terms and conditions of the contract are briefly as follows:

1. A term of thirty years beginning November 12, 1913, no rent to be paid by the lessee, his successors or assigns, provided the other conditions of the lease are complied with by them.

2. The lessee must build a line of docks or a sea-wall, dredge the channel and reclaim the land in the manner specified, a sum of not less than $105,000, United States currency, to be expended on the said improvements.

3. Said lessee shall begin the specified improvements within four months from the date of the contract and shall complete the same within two years from the said date, "It being understood and agreed that the said conditions as to the dates of commencement and completion of said construction are substituted by the conditions set out in paragraph 1 of the *Suspensory Conditions of the Lease,* a copy of which is made a part of the original proposition submitted by the said lessee for the lease of the said land."

4. The lease shall not begin to take effect until the lessee has completed the work agreed on and the same has been accepted by the San Juan Harbor Board.

5. All the reclaimed land, the sea-wall and the dredging improvements shall become the property of the Insular Government, free of charges, at the termination of the contract.

6. The buildings which the lessee may construct on the land shall belong to him provided that he remove them within

the four months following the expiration of the contract. Otherwise they shall become the property of the Insular Government, free of charges.

7. The leased property and improvements shall be exempt from the payment of taxes, but all other constructions on the reclaimed land shall be subject to taxation.

8. The lessee shall make all the repairs ordered by the San Juan Harbor Board and shall deliver the leased property to the Insular Government in good condition.

9. Said lessee shall construct and maintain, during the life of the lease, a permanent sea-wall on the water front of the leased land, subject to the conditions specified; and it is further stipulated and agreed that "the lessee shall construct a temporary sea-wall on that part of the property facing the San Antonio Channel, it being understood and agreed that at any time up to five years preceding the expiration of the lease the said lessee, if he wishes, may make a supplementary proposal to the Executive Council of Porto Rico to construct a permanent sea-wall in place of the temporary one in consideration of an extension of the duration of this lease; which proposal the Executive Council may accept or reject at its discretion."

10. During the life of the contract the lessee shall dredge and maintain a channel thirty meters wide and of a depth not less than that fixed in the plan of "San Juan Harbor Improvements" along the length of the permanent sea-wall constructed by him.

11. The lessee shall reclaim and maintain the leased property at a level of not less than 1.05 meters above low-water mark.

12. The lessee shall not begin the improvements without first securing the consent of the San Juan Harbor Board.

13. The dock and the proposed space for a street at the end and close to the edge of the pier east of the San Antonio Dock (plan of San Juan Harbor Improvements) shall not be leased and the sea-wall of the said section shall be built

by the Insular Government when it deems it advisable, and the lessee shall not be entitled to make a claim for its failure to construct the same.

14. Within two years from the date of the contract the lessor shall grant the lessee "a right of way to the said leased property at such a place as may secure to the lessee reasonably safe and convenient access to the said property, provided that the said right of way shall be granted over land belonging to the Insular Government."

15. The lessee shall use the property as a depot for the storage and sale of coal, oil, etc.

16. Equal rights shall be granted to all prospective purchasers of the said articles "under a schedule of prices fixed by the grantee according to the quantity purchased."

17. All vessels shall have equal rights to dock at the depot and "take coal or other articles at uniform prices according to the amount purchased."

18. The consent of the lessee must be obtained for docking.

19. In cases of emergency vessels belonging to the Government of the United States shall have preferred rights to use the depot, free of charges.

The public deed so executed having been presented in the Registry of Property of San Juan, Section 1, the registrar refused to admit the same to record for the reasons given in the following decision:

"The foregoing document is not admitted to record on account of the following defects:

"1. The Commissioner of the Interior is not empowered to execute a contract of lease for more than six years, inasmuch as the Act to authorize the lease of the swamp lands around the Bay of San Juan, passed by the Legislative Assembly of Porto Rico on March 11, 1909, does not confer that power upon him expressly as is required by section 1451 of the Civil Code now in force.

"2. Neither the ownership nor the possessory title to the tract of land sought to be leased is recorded in the name of the lessor as is required by article 20 of the Mortgage Law.

"3. Sections 1 and 12 of the said act empower the Commissioner of the Interior to lease or sell all or part of the mangrove swamps, but the terms of the foregoing instrument are not those of a contract of sale or of lease of the said land; for, as regards the latter, no specific rent is fixed for the use and enjoyment of the thing said to be leased, therefore there is lacking one of the essential requisites of a contract of lease, as prescribed by section 1446 of the said Civil Code now in force.

"4. The condition prescribed in section 2 of the said act has not been expressly and clearly complied with; for the lessee, who in clause 2 of the lease contracts only the vague and uncertain obligation to 'reclaim the land,' stipulates in the following clause that the conditions regarding the dates of the commencement and completion of the work 'are substituted by the conditions set out in clause 1 of the suspensory conditions of the lease,' and the document presented does not show what these are.

"5. The authority conferred by section 12 of the said act to lease or sell the mangrove swamps is limited to cases where the said leasing or sale is desirable for the reasons stated in the said section, and these reasons are not stated in the foregoing instrument.

"6. According to the law applicable to the case, the Commissioner is not authorized to create the servitude provided for in clause 14.

"7. The exemption from the payment of taxes granted in clause 7 is not authorized by section 3 of the said Act of March 11, 1909.

"8. The agreement embodied in the last part of clause 9 of this contract is not authorized by the said Act of March 9, 1909.

"In lieu thereof a cautionary notice has been entered for the legal period on page 144 of volume 5 of Puerta de Tierra, property No. 130, entry letter A, in which the following curable defects are pointed out:

"A. Ambiguity in the first part of clause 3.

"B. That although the instrument refers to other documents which contain agreements and conditions of this contract, they are not included therein nor are any copies thereof attached.

"C. That the said Act of March 11 provides that the Commissioner of the Interior shall enter into such contracts 'with the approval of the Executive Council' and no copy of such authorization to make the said contract of lease sought to be recorded is attached to or incorporated in this instrument.

"D. The instrument does not show the location or the area of the land said to be leased.

"E. Although the lessee is married the name of his wife is not given.

"San Juan, Porto Rico, June 15, 1914.

     (Signed)  "JOSÉ S. BELAVAL, Registrar."

Having been notified of the above decision, the applicant withdrew the instrument and on July 29, 1914, both contracting parties appeared before Notary Herminio Díaz Navarro and executed a public instrument for the purpose of correcting the defects assigned by the registrar and of rectifying the former instrument executed before Notary Roberto H. Todd.

In the instrument of July 29 it was set out that the property from which the leased tract was segregated was recorded in the registry and the property and the tract segregated were duly described; that the lease of the tract was made at public auction under the conditions stated in the document attached to the public instrument; that Hernand Behn was the only bidder at the said auction and a copy of his proposal was attached; that by virtue of the public auction the contract of lease of November 12, 1913, was executed and the same was incorporated in and ratified by the public instrument of May 21, 1914, and that the contract was authorized by the Executive Council at a public session held on October 23, 1913, according to a document also attached to the public instrument.

The third, fourteenth and ninth clauses of the instrument executed on May 21, 1914, were explained in the instrument of July 29 of the same year, as follows: That the said "suspensory conditions of the lease," referred to in the third clause, were the conditions set out in a writing which was attached to the instrument and that it showed that the lease in question was in the interest of the public, inasmuch as the lessee agreed to invest a large sum of money in the reclamation of lands at present worthless, which reclaimed lands would subsequently become the property of The People of

Porto Rico; that, as to the fourteenth clause, the right of way which the lessor agrees to grant to the lessee is based on the obligation imposed by section 574 of the Civil Code, as the tract leased has no other outlet than over the lands of The People of Porto Rico which comprise the remainder of the property from which it has been segregated; and that as to the ninth clause, what is agreed upon is in conformity with plans made by the Department of the Interior for reclamation, dredging and building of docks in the Harbor of San Juan.

The public instrument of July 29, 1914, also contains certain statements of the parties explaining why they consider that the Act of March 11, 1909, for the lease and sale of the mangrove shores of the Harbor of San Juan authorizes the execution of the contract referred to, and gives the name of the wife of the lessee.

The public instrument of May 21, 1914, together with that of July 29 of the same year, accompanied by the exhibits therein referred to, was presented anew in the registry and the registrar again refused to admit it to record for the following reasons:

"The cautionary notice referred to in the foregoing decision is not converted into a record as is requested by virtue of a public instrument executed before Notary Herminio Díaz Navarro, also presented, because the said instrument cures only the defects assigned in the said decision under numbers 2 and 4, the other defects assigned therein remaining; and with respect to these, the applicant has presented no new documents, but merely expresses his own personal opinions and arguments, which are not sufficient to justify a modification of the foregoing decision denying admission of the instrument to record and already consented to. No action has been taken as regards the curable defects set out therein, as no request therefor was made.

"San Juan, P. R., August 24, 1914.

(Signed)          "JOSÉ S. BELAVAL, Registrar."

Lessee Behn having been notified through his attorney of this last decision on September 3, 1914, he filed a notice of the present administrative appeal in the office of the secretary of this court on September 23, 1914, and on October 1, 1914, he filed a brief in support thereof.

Service having been made upon the registrar, he filed a brief and prayed for dismissal of the appeal on the following grounds: (1) Because the appeal was not taken within the legal period, and (2) because the decision denying admission to record of the instrument of May 21, 1914, was consented to and therefore became final.

As to the first question raised by the registrar, we will say that it carries no weight whatever. The registrar's contention is based on his erroneously considering October 1, when the appellant filed his brief, as the actual date of the interposition of the appeal. The appeal was taken on September 23 and as the appellant was notified of the last decision of the registrar on the third of that month, he was within the twenty days allowed by law for taking appeals to this court from decisions of registrars denying admissions to record. Section 3 of the Act to provide for appeals from decisions of registrars of property; Revised Statutes and Codes of Porto Rico of 1902, page 289.

In the case of *Hernández v. The Registrar of Property,* 14 P. R. R., 768, a certain mortgage deed and deed of assignment of the same were presented in the registry for record and the registrar refused to admit them. The interested party allowed the time prescribed by law for taking appeals to this court to expire and again presented the deeds in the registry for record accompanied by another document. The registrar again refused to admit the same "as the same defects which are mentioned in the preceding decision are noted." Thereupon the interested party appealed to this court, which dismissed the appeal as to the first two decisions denying the record, because it was brought too late, and affirmed the other decisions, concurring with the registrar that

the defects referred to in the former decisions had not been cured. The language of this court in the above case was as follows:

"Notice of the decisions of the Registrar of Property of Aguadilla denying the record of the two deeds of October 4, 1905, and November 10 of the same year, was served upon the person presenting the document on the same date of such decisions—that is to say, on July 22, 1908—and said documents were received in the office of the Secretary of this Supreme Court on the following 18th of August, when more than the 20 days prescribed for such presentation by section 23 (3) of the act to provide for appeals from the decisions of registrars of property, approved March 1, 1902, had elapsed, and, consequently, such decisions must be considered to have been accepted.

With regard to the decisions denying the record of July 30, 1908, from which the appeal may be considered to have been taken within the legal term of twenty days, it is only possible to discuss whether the registrar erred or not in holding that the defects had not been cured which gave rise to the denial of the record on July 22 of the documents mentioned, which defects the party interested did not object to in due time, but on the contrary accepted them, thus contracting the obligation of correcting them.

"The certified copy of the declaration of heirs of Lorenzo Orfila does not cure the defects which the registrar took into consideration in his decisions of July 22, 1908, denying the record, because such declaration is a document foreign to such defects."

The doctrine laid down in the case of Hernández was applied and ratified in the case of *Barreras* v. *The Registrar*, 15 P. R. R., 542, wherein this court expressed itself as follows:

"An appeal does not lie from the decision of March 19 last denying the record which is the subject-matter of this appeal, since it is against it that Barreras Padró directs his arguments, said decision being but a reproduction of the previous one of July 27, 1908, which Barreras Padró accepted.

"In support of the doctrine above set forth we have the decision of this Supreme Court of November 30, 1908, on an appeal taken by Fabio A. Hernández, from a decision of the Registrar of Property of Aguadilla, strengthened by the consideration that, if the incessant

renewal of cautionary notices of titles not recorded on account of incurable defects were permitted, the record of perfect titles of other persons would be indefinitely prevented.''

Therefore, in accordance with our own jurisprudence we are limited in this case to considering and deciding whether or not the interested party cured the defects assigned by the registrar in his first decision. In the light of administrative proceedings the said first decision was accepted by the interested party. He could have appealed to this court within the ample time allowed by law. He did not do so and now must take the consequences of his own acts.

Having thus decided the second and last question raised by the registrar, let us see whether the appeal should be dismissed, as is contended by the said official. We will consider the defects in the order followed in the decision of June 15, 1914.

1. It cannot be held that the first defect, i. e., the lack of authority on the part of the Commissioner of the Interior to execute the contract, has been cured. Whether the Commissioner was empowered to execute the deeds of May 21 and July 29, 1914, depended upon the law itself which was in force at that time, namely, the Act to authorize the lease or sale of the swamp lands around the Bay of San Juan, approved March 11, 1909. The last deed could add nothing to the first. Good practice required that if the interested party did not agree with the theory of the registrar in regard to this point, as set out in his decision of June 15, he should have appealed to this court within the time fixed by law.

2. The second defect was corrected, as is admitted by the registrar in his decision of August 24. When the contract was presented the second time in the registry the ownership of the leased property was already recorded in the name of the lessor.

3. The third defect was not cured. The question involved therein, namely, whether or not the contract was a contract

of lease, could have been submitted to this court immediately after the first decision.

4. The fourth defect was corrected as to its last part, as is admitted by the registrar in his decision of August 24. Before executing the deed of May 21 the contract of lease under consideration had been entered into in a private document. In that private document a time had been fixed for the commencement of the work and in the deed that time was substituted by the time stated in the suspensory (precedent) conditions of the lease. If the deed of May 21 is considered alone, the defect exists; but if the deed of May 21 is considered in connection with that of July 29, and particularly with the accompanying document which contains the conditions precedent referred to, the defect is corrected.

The existence or non-existence of the first part of this defect could have been submitted to this court by appealing directly from the decision of June 15, inasmuch as no new obligation was laid on the lessee by the deed of July 29, all his rights and duties being set out in the deed of May 21, 1914.

5, 6, 7 and 8. All the questions raised in the fifth, sixth, seventh and eighth defects could have been considered and decided by this court if the interested party had appealed from the first decision within the proper time. What is stated in regard to said questions in the deed of July 29 and what appears in the accompanying documents tend only to give a further explanation of the facts which appear differently in the deed of May 21.

Having considered the defects assigned as incurable, we will proceed to consider the curable defects, also following the order in which they are stated in the decision of June 15.

A. We have seen that the ambiguity observed in the deed of May 21, through failure to exhibit the so-called suspensory conditions of lease, was rectified by the presentation

anew of the said deed accompanied by that of July 29 and by the said conditions.

B. This was corrected inasmuch as the documents which had been omitted, according to the registrar's decision, were presented on the second occasion.

C. Cured. One of the documents exhibited with the contract when it was presented in the registry on the second occasion contains the authorization of the Executive Council to which the registrar refers.

D. Cured. The property from which the leased tract is segregated and the leased tract itself, which is the object of the contract, are properly described in the deed of July 29.

E. Also cured. The name of the lessee's wife is given in the deed of July 29.

Having concluded the consideration of the only questions involved in this case which we are able to pass upon in this appeal according to established jurisprudence, we must state clearly that in concluding that the defects assigned in the decision of June 15 under numbers 1, 3, 4, in its first part, 5, 6, 7, and 8 were not cured, by no means implies that we admit the existence of such defects, but only that we are unable to inquire into the same because no appeal was taken therefrom within the time prescribed by law.

In the interest of justice we should state also that the decision of the registrar in this case binds the lessee who presented the document and consented to the decision, but does not bind the lessor who did not intervene in any way in the registry. This question is settled both by law and jurisprudence. Article 6 of the Mortgage Law; *Colonial Company v. The Registrar*, 1 D. P. R., 396, 401.

In view of all the foregoing, the appeal must be dismissed in so far as it applies to the decision of June 15, 1914, for not having been taken in time, and the decision of August 24, 1914, is affirmed with the modification that the curable

defects assigned under letters A, B, C, D, and E in the decision of June 15, 1914, were cured.

> *Appeal dismissed so far as it refers directly to the decision of June 15, 1914, and decision of August 24, 1914, affirmed with a modification that the curable defects assigned under letters A, B, C, D, and E of the said decision of June 15, 1914, are held to be cured.*

Chief Justice Hernández and Justices Aldrey and Hutchison concurred.

Mr. Justice Wolf signed stating that he agreed with the decision.